May it please the Court. We're asking for a new trial here because there is at least a reasonable possibility that the jury's verdict was affected by outside information that went to the issue that the jury was asked to decide here, which is whether XTO's drilling caused vibrations that damaged Ms. Hiser's house. There isn't any conflict in the juror testimony. Before the jury's seats were even warm, the jury foreperson brought up fracking and oil gas operation that was never discussed at trial. And then, even after the jury was instructed to only consider what was in evidence, half of the jury continued to talk about outside information. Counsel, do we have any findings of fact as to what really happened after the instruction was given? What we have in the opinion is a recitation of some of the testimony that was given by the jurors. And then the Court, there's really no explanation. The Court, the trial court just jumps to the conclusion that there was no prejudicial extraneous information that influenced the jury. But you didn't raise that as a point on appeal, the lack of adequate findings, right? You think the findings are pretty clear? Well, I think the finding that the court made was that there wasn't a need for a new trial because they weren't influenced by extraneous outside information. And that conclusion is what we've appealed and said, well, our position is that the testimony that was given all points in the direction that there should have been a new trial because there was outside information that prejudiced the jury because it went to the issue in the case. And based on that unconflicted testimony, there was at least a reasonable possibility that the jury's verdict was affected by the outside information that they heard in the jury room. Well, let me ask you two questions. First, do you think that the Supreme Court decision in Wargraver's may affect this? Should we, I guess, should we hold this case for the Supreme Court? I'll have a chance to answer that question, I guess. No, I don't think we have to hold it for the Supreme Court because, again, the testimony is unconflicted here that the jury continued to talk about earthquakes being caused by drilling after the jury instruction. All that the other jurors besides Ms. Tranum, Ms. Watson, and Mr. Horn say is, are these five or six people that Ms. Tranum says talked about earthquakes, they didn't hear it and they didn't participate in it? Well, then my second question is, I guess my big concern here is, I don't want to get too much into the slippery slope, but are we going to have every jury now brought in and, well, did you talk about insurance or did you talk about the fact that your uncle's and cousin's sister didn't get their workers' comp benefits and the big bad insurance company? Is that going to be every trial now? It's not because here we're not talking about jurors that are just talking about a personal belief or a thought they're having. What we have is the jurors came in and talked about news reports. This is not personally- What about if they talk about news reports? I read on the news, when I was trying jury cases as a trial judge, the first thing everybody wanted to talk about in jury selection for about three years was the woman who got the $2 million or whatever it was from McDonald's because they spilled the hot coffee. We had to go through voir dire on that. If somebody comes in and says, well, I'm not going to give them any money because I read about this woman who got $2 million from McDonald's for the hot coffee and that's the dumbest thing in the world. Do they get a new trial? Well, I mean, here the problem is- Well, no, do they get a new trial in that case? In that case, I don't know because in the Banger case, this court has said news media reports of events connected with the matter on trial is enough to warrant a new trial. These weren't news events. You said this had nothing to do with the case. The news events in our particular ... Well, the news coverage that the jurors talked about in our case, it did because it ... Again, the issue in the case is whether drilling causes vibrations, vibrations that damage Ms. Heiser's house. They're specifically talking about outside news reports that the same type of operations, drilling operations, cause vibrations that cause earthquakes. It's that causation link is exactly what they're talking about based ... Not on personal experience. Do you really expect a jury of intelligent citizens to be immune and have no knowledge of widespread media reports about such as this? I mean, in Arkansas, fracking has been all over the news for years. How can you expect a jury to be immune from knowledge of those kinds of reports? I don't expect- I mean, is it the fact that they talked about it or is it the fact that they knew about those reports? If you're making a distinction, what is the difference? If they go in and they know about them and it's on their mind, but they just don't talk about it, aren't you cutting this pretty finely? I don't think so because I think it's been pretty clear in cases like Bangert that when jurors bring news reports into the jury room that are about the issues that are at trial, that that's improper. If you look at the Anderson case in particular, there was one juror in that case that came in and he had outside information. He talked about it with the other jurors, but it went to the controlling issue in the case, which is exactly what we have here. And this court said, based on just that one juror's exposure to outside evidence, that it was enough to warrant a new trial. Here, we don't just have one juror. We have five or six jurors who not only came in with- I mean, there's still a difference between bias and then coming in and talking about, I read on the news. In that situation, it's no different than bringing a report in. Wasn't Anderson a considerably different case than in that case, they went out and actually did experiments? That's correct. The facts are different, but still, the main thing to draw from Anderson, and it's talked again about and more, is that what the jurors considered this outside information went to the- they call it the controlling or the crucial issue in the case, which here is drilling causes vibrations, which is exactly what the news reports the jury discussed were about. Well, did they talk about- did they actually talk about news reports? They did. Where do you- where is that in the record? I'm looking at the affidavits, and I don't see that the affidavits- or maybe I'm just overlooking it, but I don't see that the affidavits talk about news reports. That came through the testimony of Ms. Tranum. I can get you the specific record size, but she says, I think, at least a couple of times that the jury talked about they had heard in the news, they had read in the news, they had seen news reports that drilling causes earthquakes. Do you think the record's clear there was no talk about fracking after the judge's instruction? I think the- I think yes. I think the primary discussion that we're concerned about here, which the fracking- granted, there was no evidence presented at trial that there was fracking going on, so what's really important here is that after the instruction, they talked about drilling caused earthquakes, which is the operation that XTO was doing next to Ms. Heiser's house. So you think- we don't have specific facts, fact findings, as you well know. So you think after the instruction, your position is probably no discussion of fracking, right? Of what the judge found? I think what the judge decided at the hearing is that she wasn't going to ask about fracking discussions because she was convinced that the fracking happened before the instruction, so she focused her questions on whether or not they talked about earthquakes specifically linked to drilling after the instruction. And earthquakes, you mean the earth vibration that caused the alleged damage? Well, I don't think there was ever any allegation in this case that an earthquake caused the damage. But after you used the word earthquakes, they talked about earthquakes then causing the damage? In the jury room, they talked about news reports that drilling, just like what XTO was doing, caused earthquakes. There was never any proof presented in the trial that anything that XTO was doing caused earthquakes. It was that it caused vibrations, the same kind of thing as the earthquakes they were talking about in the jury room. So what's wrong- okay, so now I guess I'm really kind of lost. So a juror comes into a jury room and says, well, I've read about all these GM faulty key ignition problems and maybe this automobile accident was caused by that. You send out a question and the judge says it has nothing to do with that, and then they don't discuss it anymore. You're saying that just asking that question tainted the whole verdict? Well, if they ask the court about it and get an instruction back that says don't consider that, and then there's nothing to show that they did talk about it after the instruction, then that would be an entirely different situation. I thought you just said in answer to Judge Benton's question that you agree there was no further discussion after the instruction. Well, there's two discussions. One discussion is as soon as they got in the jury room, the jury floor person immediately brought up the idea of- brought up the issue of fracking. And according to Ms. Tranum's affidavit, the jury talked about whether or not fracking was negative, whether or not it could have caused earthquakes. Then the instruction was given, and Ms. Tranum says after the instruction was given, that they talked about whether drilling causes earthquakes. They didn't mention the word fracking maybe, but they talked about drilling causing earthquakes. And actually, if you look at Ms. Watson's testimony, she says that they brought up- that somebody tried to bring up fracking after the instruction, and the floor person said, well, we can't talk about that. Well, now, if you believe Watson, she says there was no discussion of earthquakes after the judge's instruction. So if the judge- if the district judge believed Watson and disbelieved Tranum, this case is an easy case. Well, I don't- How do you know the district court just didn't disbelieve Tranum? Well, I don't think that's what Ms. Watson said. I think what Ms. Watson- She says no. Did you overhear any discussion about earthquakes after receiving my answer to the question? Her answer is no, you know. And I think that the important word there is overhear. Did you overhear any discussion? Okay, the next question is, did anyone tell you such a discussion occurred? No, no is her answer. Again, that's her personally participating in a discussion. And I don't think Ms. Tranum ever said that the entire jury talked about drilling in earthquakes, but she did say half of the jury talked about it. If the judge believed her. Right. And the standard for the judge also, as we're looking at this, again, it's a reasonable possibility that it altered. It's not a preponderance. It's not beyond a reasonable doubt. And on review, for an abuse of discretion, you have to show that there is substantial evidence that supported the judge's decision. And here, all of the evidence points in one direction. Five or six jurors talked about drilling causing earthquakes after the instruction. All we have from Ms. Watson and Mr. Horne is that it wasn't them, and they didn't hear it. Okay. So, going back to it, the issue here is that the jury talked about outside information that they gathered, not from personal experience, but from news reports, that they continued to talk about the instruction. Again, it went to the crucial issue in the case. If I can, I'd like to. But the news reports were not about this event. That's correct. Do you agree with that? But the news reports were about the exact causation link that the plaintiff had to prove in this case. The news reports were gas drilling had possibly caused earthquakes in the state. That's your best evidence, right? Tranum's statement? That's correct. That's what Ms. Tranum said. If I can, I'd like to reserve the remainder of my time. Thank you. Your Honor, may it please the court. This appeal is about extraneous prejudicial information. I think the first thing we need to look at is what is the information that was actually considered. The standard might be a reasonable probability of prejudice, but it's not a reasonable probability that some information was discussed. Where we started, this went to a jury verdict on August 29th of 2012, a little over two years ago. On October 8th, 2012, Juror Tranum swore out an affidavit that says there was some discussion of fracking. When several jurors expressed unfamiliarity with fracking, the juror that raised the issue gave an expression of what fracking was and what it entailed. There's no discussion of earthquakes. She expresses an opinion that this discussion of fracking had some impact on the jury. That can't be considered by any court anywhere, right? Yes, Your Honor. The last thing you said, you agree with that? I agree with that. Proceed. And we'd already known that some discussion of fracking had occurred because the jury asked a question. The parties discussed it, and rather than requesting void of error or mistrial, the jury was instructed, consider the evidence that's in front of you. And throughout the entire process that went on over a year and a half or so, discussing this issue of what went on in the jury room, it's kind of been presumed that the dividing line is that instruction because if anything prejudicial happened before, it was waived. I think that was, throughout the process and the numerous hearings, that was the clear impetus from all the parties. In January, Juror Tranum, I'll take that back. In January, Juror Watson provides an affidavit that says there was some fracking destruction before the instruction. Sorry about the noise. Just go ahead for now. I appreciate that, Your Honor. In response, Juror Tranum submits a second affidavit that says there was a discussion about fracking and now a discussion about earthquakes, and that she's reasonably certain the jury discussed earthquakes after the first jury instruction. I think it's notable. It's more of the power of suggestion. But this second affidavit occurred, was written by defense counsel after a second interview with her, and if you ask somebody time and time again, well, did you talk about earthquakes? Did you talk about earthquakes? They get it in their head that they probably talked about earthquakes. And in this first affidavit, the discussion of fracking and earthquakes seems to be tied. It doesn't seem that there will be two separate discussions about fracking causing earthquakes and then a second discussion about, well, all drilling causes earthquakes. It was tied. I'm going to talk about the general versus specific, but it's impossible to deny that there is widespread media coverage throughout the country about whether the effects of fracking cause earthquakes. And everyone knows that in Arkansas we had hundreds of earthquakes in 2010. There's no way to get that out of your mind just like the hot coffee story and any other news account. Counsel, let me focus you. How can you tell what the district court really found? Because if she completely disbelieved the one juror on the facts, this is an easy case. And if she completely believed the other jury, it's an easy case. So how do we know what they found? Your Honor, it is difficult to tell what she found because she just lists the testimony. But I think you can... Does that demand a remand? I don't believe so, Your Honor. I think you can look at the testimony and clearly see who she believed. And it is actually possible to reconcile this testimony because when Juror Tranum was placed under cross-examination, she couldn't provide any specifics about this earthquake discussion. She thinks it happens after the instruction, but she's not sure. She used the word reasonably certain because that's what the attorney who drafted the affidavit used. What she did say is the conversation lasted one or two minutes. It may have included five or six jurors, but she's not sure who led the discussion and who participated. And she also testified that it was not any kind of scientific discussion. It was just kind of a general notion. I think it's also telling to point out that Juror Watson, when she was examined at trial and this was brought up in the briefing, she described the juror who made the brief statement after the instruction that says, so we can't talk about fracking. And it's in the conversation between counsel and the court that the only juror who matched that physical description was Juror Tranum. Of course, I understand the physical description is not in the record. The physical description isn't in the record as in we don't have a picture of each one, but the discussion between counsel is in the record, between counsel and the court. I think that's a fair inference from the record. I think that kind of ties to a bigger thing. We've talked a lot about these are fine distinctions that you're going to make and what would be disqualifying to a juror. I think if this jury, if this verdict is subject to attack, every verdict is going to be subject to attack. It's going to completely undermine the policy of stability of jury verdicts because here we are two years after the fact and we're discussing what may or may not have been said about earthquakes and fracking and when it may or may not have been said. And this opens up the floodgates. But these fine distinctions are also a reason why this is left in the firm province of the trial court. This is reviewed for an abusive discretion standard. The judge is the one that listens to the testimony that observes the jury both during trial and in the after-the-fact conversations and can make these credibility determinations better than you can through a cold record. That really covers whether the information part of it and I think that it is unclear what the jury discussed but I don't agree that even if they mentioned earthquakes after, it's an easy case because it was such a brief discussion. It's something that's in the consciousness. The testimony from the jury is that it got shot down quickly and we don't know who... So you're assuming the judge believed Trandum's testimony? I'm assuming that the judge credited some of Trandum's testimony. Well, no, now wait. You can't split it too finely here because we don't have any findings. If you get into that, you're to a remand or something like that. That's your position. Yes, you are. You can reconcile most of the testimony except for... You said most. Well, how about... You like the maybe a couple of minutes and you like a little bit of it but... A little bit of it. The point of it is that the discussion about when it occurred was very vague and general. Just like her discussion of what was actually said was vague and general. She wasn't able to say, I remember it happening at this point in the trial. She said, I kind of remember it being later in the day and I know we asked the question at 1, so it must have been later in the day. When you look at the cases, you can really break down between what are objective incidents, which are specific information. The juror that performed the test, the seatbelt. Specific information from a news article that's read, which was the criminal case regarding Karamark. During trial, the jury read an article that said one of the defendants was found guilty and paid $367 million. On the other hand, you have a lot of cases where there's just some kind of general publicity and common knowledge. Here we don't have anyone saying, I read in the New York Times this morning this article. Here, let me show it to you. I've heard from news reports or from my neighbor, it's widely reported that fracking causes earthquakes or fracking might cause earthquakes. What was... The lawsuit itself in the plaintiff's theory, was it that the damage to this home was caused by vibrations from subsurface activities or just from surface vibrations of heavy equipment? I believe it was just from surface vibrations of heavy equipment and that's what was presented at trial. Did the notion of fracking or the topic of fracking or any impact of subsurface drilling, did any of that come up or was mentioned during the trial? No, Your Honor. Maybe counsel during the trial should have clarified that for the benefit of the jury. I mean, the jury had this question. It sounds like a fair question. Whether this involved fracking. Perhaps that's something that should have been clarified. Yes, Your Honor. I'm not sure we can blame the jury for thinking about that question, coming up with that question, wondering if there's an answer to it. I agree with you. The point at which to handle that is at the point when the jury asks the questions. What the parties agreed to do is to instruct the jury, you have the evidence, follow the record, and based on the Brown case, which was cited by the defendants, that pretty much cuts off any extraneous discussion that happened before that point. So even if you go to the point that this publicity of fracking was somehow extraneous prejudicial information, that argument's waived when you don't move from mistrial or try to get it clarified at that point. Because otherwise we're here two or more years afterwards, second-guessing what should have been done at a specific point in trial when all the parties agreed that that was how to handle that point at that time. And on the discussion of there has to be a reasonable probability that this prejudiced the jury, I think this is the point where you can look at some juror's testimony about what she did remember about this discussion, whether it did happen before the instruction or after the instruction, is that it was a, whatever the discussion that she remembers was, was a brief discussion, lasting no more than one or two minutes. Maybe a couple of minutes, go ahead. Lasting maybe a couple of minutes, and this is a jury deliberation that went on for three or four hours. I don't believe that just that sheer mention of it on that smallest scale with a few people participating is enough to show that there is a reasonable probability that this prejudiced the jury. On the discussion of whether fracking causes earthquakes or the earthquakes meaning vibrations and the jury getting that confused, if you go with the defendant of earthquake as any vibration in the earth's surface, then there was technically evidence introduced of earthquakes at trial because there was evidence introduced about vibrations. But this minor discussion about whether fracking causes earthquakes, that's simply not enough to show that there is a reasonable probability that whatever this small verdict was would be different had that conversation not occurred. And on a final point about whether this should be remanded with instructions to subpoena Judge Michael Horn, the foreman who gave the, who gave it but then disappeared, didn't return the court's phone calls, he says he thinks the earthquake discussion, or I'm sorry, he says that the jury discussed fracking before. He was the one that kind of gave an explanation about what fracking was and that was it. There was no discussion afterward. But one of the policies behind 606B is to prevent harassment of the jurors. And obviously Mr. Horn lost interest in talking about what happened during deliberations and talking to both counsel. If this gets reversed, particularly if this gets reversed with instructions to subpoena him, I don't know where it would ever stop in a trial. We're going to subpoena all 12 jurors after every trial, conduct examinations of them, and figure out if there's anything we can use to say had a reasonable probability of taming the juror. We'll make one brief point on... I apologize, I forgot the name of the case. The recent 8th Circuit case where the Supreme Court has granted cert on this issue. Regardless of how that case comes out, I don't think this case needs to be held pending that. The issue in that case is more about whether a juror's testimony can be used to impeach his statements on Bourdain. I think some of the policy implications brought up in that case would certainly bear on this case. If the Supreme Court affirms this court, I think this becomes a much easier case. But even if the Supreme Court were to reverse it, it deals with a different situation. And I don't believe that this case should be held pending that. If there's no further questions, I'll concede the rest of my time. Thank you, counsel. Thank you, Your Honor. Rebuttal? I'd like to respond to a few points that opposing counsel made. First of all, the question about subsurface versus equipment on the surface. There was no evidence that equipment in this case caused the vibration. There was no evidence that it was caused by subsurface. What the evidence was, was that there was drilling and there was damage to the house. An expert said that damage could be caused by vibrations. He also said, though, on cross, that it could be caused by construction. And talking about foundational issues, foundational principles, another... My opposing counsel talked about the reason behind 606B, but it's also clear that it's... I think the Supreme Court calls it a touchstone that the jury only consider what was put into evidence and not consider these outside sources. Opposing counsel talked about specific information. That's exactly what they had here. They had a news report that established the causation element that was the essential part of their case. And he talked about publicity not being something that would be considered outside influence. Well, how did it establish a part of their case? Because if counsel's correct, fracking never came up during the trial, nor was there a theory that any subsurface activities in this... with respect to this well operation was responsible for any damage. So why isn't it just a totally unrelated bit of information that the jury happened to talk about? Again, there wasn't any evidence in this case what at the XTO site was causing the vibrations that they were alleging. They just said they were drilling here. We felt vibrations. The vibrations were caused. So it's that crucial piece. Whatever these operations were, which were never identified, whether they were subsurface or equipment on the surface, whether those caused vibrations that damaged the house, which is exactly what the news report that Ms. Tranum talked about. Also, again, there's no conflict in the testimony. Well, was the plaintiff's theory that earthquakes damaged the house? The plaintiff never mentioned the word earthquakes. So, again, it seems to me that what the jury talked about is getting further and further removed from any facts and issue in the case or the theory of the case. Well, the case was about drilling causes vibrations. And that's exactly what the jury talked about. Drilling causes vibrations. And if I can address the question about the news, I went back and looked and the places where Ms. Tranum has spoken about the news are at Addendum 26, Addendum 27, Addendum 28, and Addendum 30. So she says it several times, and she also says it wasn't a side conversation. Can I ask one other question? One of the things we also tell jurors is they don't check their common sense at the door. Now, if the position of XTO Energy was that drilling doesn't cause vibration and the plaintiff's theory is that drilling does cause vibration and it caused the damage to their house, are jurors to put out of their mind altogether extensive news coverage of other cases where drilling causes vibration? I see I'm out of time. If I can answer the question and then wrap up. I think in that situation, it's very clear in the case law. Here the issue was I don't think our position was so much drilling doesn't cause vibrations. It was that if drilling causes vibrations, it doesn't cause vibrations that would have damaged Ms. Kaiser's house, which is specifically what the news reports went to. And I think the jurors did have a duty in this case to not talk about news reports that specifically went to the issue that they were asked to decide. So the jurors here told one story that doesn't have any conflicts. Even worse than what happened in Anderson. In that case, it was only one juror that the court looked at. And there was conflict in the testimony. Here, half of the jury talked about news reports that went to the essential issue in the case, vibrations caused by drilling. Okay, thank you. Counselor, your time is now expired. Thank you both for your arguments. The case is submitted.